IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| INSITE PLATFORM PARTNERS, INC., doing business as NORTH AMERICAN SATELLITE CORP., | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | No. 16-00491-CV-W-BP |
| ORBCOMM, INC., doing business as ORBCOMM SENS, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER AND OPINION DENYING
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

On June 30, 2016, the Court conducted a hearing to consider Plaintiff's request for a preliminary injunction. After considering the parties' arguments and evidence, the Court concludes that Plaintiff's motion for preliminary injunctive relief must be **DENIED.**

## I. BACKGROUND

Plaintiff filed this suit in state court on May 13, 2016, and thereafter Defendant removed the suit to federal court. At this moment, Plaintiff's original Petition (which the Court will hereafter refer to as "the Complaint" to comport with federal nomenclature) remains the operative pleading.

The Complaint, (Doc. 1-1, pp. 4-8), alleges that Plaintiff owns patents on a system called "SkyTracker," which allows real-time monitoring of gas storage tank levels via satellite. (Complaint, ¶ 5.) Plaintiff contracted with Comtech Mobile Datacom Corporation ("Comtech") for provision of the low earth orbit ("LEO") satellite services necessary for SkyTracker to function. In June 2013, Plaintiff and Comtech entered a Contract Settlement Modification

("Contract") that governed the terms of their relationship from that date forward. (Doc. 7-2.) Defendant purchased Comtech or its contracts in October 2013, thereby assuming the Contract. (Complaint, ¶ 6.)

Meanwhile, beginning in 2007, a number of Plaintiff's SkyTracker units "were pirated, stolen, and/or reverse engineered to operate without Plaintiff's knowledge." Plaintiff discovered this fact in 2013 and directed Defendant to terminate the LEO service to those units. (Complaint, ¶ 8.) Plaintiff alleges that Defendant did not terminate the LEO service as directed, and that Defendant is now demanding that Plaintiff pay for the LEO service on the units that Plaintiff asked to be terminated. (Complaint, ¶¶ 9, 11.) In its latest notice Defendant threatened to terminate its provision of LEO service for all of Plaintiff's SkyTracker units if the amount due is not paid or if some other satisfactory arrangement is not reached. (Doc. 1-1, p. 19.)

Count I of the Complaint seeks a temporary restraining order and preliminary injunction. Count II seeks a permanent injunction. Both counts seek to prevent Defendant from terminating the LEO service, and both counts are premised on the theory that Plaintiff does not owe the amount Defendant demands and that termination will irreparably harm Plaintiff. However, the Complaint does not allege a cause of action, or even set forth any allegations suggesting that Defendant is obligated to provide LEO services to Plaintiff. Plaintiff's Memorandum in Support of its request for a temporary restraining order and preliminary injunction, (Doc. 1-1, pp. 13-18), does not suggest a cause of action. Plaintiff contends it is likely to succeed on its "claim" that it did not owe the amount Defendant demanded, but Plaintiff's Memorandum does not present any basis for contending that Defendant is obligated to provide LEO services so long as Plaintiff's account is current.

2

## II.  DISCUSSION

The Eighth Circuit has "enumerated four factors to be weighed by the district court in deciding whether to grant or deny preliminary injunctive relief: (1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc).  While no single factor is determinative, since *Dataphase* the Eighth Circuit has consistently held that likelihood of success on the merits is the most important factor. *E.g.*, *Barrett v. Claycomb,* 705 F.3d 314, 320 (8th Cir. 2013); *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012).  Satisfying this standard requires that Plaintiff demonstrate it has "a fair chance of prevailing."  *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008); *see also 1-800-411-Pain Referral Serv., LLC v. Otto,* 744 F.3d 1045, 1054 (8th Cir. 2014).  However, if there is no likelihood of success on the merits, then the motion should be denied.  *E.g.*, *CDI Energy Servs. v. West River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009); *Mid-Am. Real Estate Co. v. Iowa Realty Co.,* 406 F.3d 969, 972 (8th Cir. 2005).

Therefore, the Court starts with considering Plaintiff's likelihood of success on the merits, and is immediately confronted by the Complaint's lack of a cause of action.  Without a cause of action, the Court cannot determine whether Plaintiff can prevail, much less whether preliminary injunctive relief is appropriate.  This matter was discussed extensively during the hearing.  Counsel suggested that Plaintiff is asserting a claim for breach of contract; specifically, the Contract provides that upon written notice of a billing dispute "the other party will provide

3

copies of all records reasonably necessary to resolve the dispute" and "[n]o payment of the disputed portion of the bill will be due until ten (10) days after such records are delivered to" Plaintiff.  However, counsel conceded that the records were supplied in early June and that ten days have passed.  Therefore, assuming for the sake of argument that (1) this theory was contained in the Complaint[1] and (2) Defendant breached this obligation, the breach has been cured and a preliminary injunction would not be warranted.

There is a larger issue that further hampers Plaintiff's ability to demonstrate likelihood of success on the merits: there does not appear to be any provision in the contract that precludes Defendant from terminating LEO services to Plaintiff regardless of whether or how much Plaintiff owes.  The Contract provides that it is for a minimum of a two-year term commencing on its execution date of June 25, 2013.  Plaintiff points out that the parties have continued their business relationship beyond June 2015, and the Court accepts that the Contract probably governs the parties' relationship so long as it lasts – but this does not mean that the parties are contractually obligated to each other in perpetuity.  The Court cannot identify – and Plaintiff has not alleged – any provision of the Contract that precludes Defendant from terminating the parties' relationship and discontinuing its provision of LEO services.  To obtain an injunction requiring Defendant to continue providing LEO services, Plaintiff must (at a minimum) advance a claim entitling it to the continued provision of LEO services.  Such a claim was not advanced in the Complaint or mentioned during the hearing.

---

[1] Counsel suggested that this theory could not have been included in the Complaint because Defendant had not provided the documents.  The Court does not understand this contention: if the failure to receive documents was the alleged breach, then Plaintiff did not have to receive the documents before alleging the breach.

4

Finally, the Court addresses the Amended Complaint Plaintiff wishes to file. After the hearing, Plaintiff filed a Motion for Leave to File an Amended Complaint; the motion is not ripe for ruling, and the Court discusses it only to address its impact on Plaintiff's current request for injunctive relief. Unlike the Complaint, the Amended Complaint would assert claims for breach of contract,[2] fraud, and conversion. However, these claims were not presented before the hearing, were not discussed during the hearing, and the Court has no present basis for concluding Plaintiff is likely to succeed on any of the claims. Moreover, it does not presently appear to the Court that a preliminary injunction would remedy any of the claims, as none of them have anything to do with Defendant's ability to terminate the provision of LEO services. For these reasons, Plaintiff's request to file an Amended Complaint does not affect the Court's analysis.

The Court discerns no need to discuss the remaining *Dataphase* factors. Plaintiff's failure to (1) identify a cause of action, (2) upon which it is likely to prevail, (3) that would entitle it to an order requiring the continued provision of LEO service precludes any need to further analyze the matter.

### III. CONCLUSION

The Court is unable to conclude that Plaintiff is likely to succeed on the merits of any claim that justifies entry of a preliminary injunction requiring Defendant to continue providing services to Plaintiff. Accordingly, Plaintiff's request for a preliminary injunction is **DENIED.**

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
Date: July 1, 2016   UNITED STATES DISTRICT COURT

---

[2] The breach of contract claim asserted in the Amended Complaint incorporates the theory advanced during the hearing, (Doc. 11-1, ¶ 31), and additional theories as well, but none of the theories suggest the Contract precludes Defendant from unilaterally terminating the parties' business relationship.

5