IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| INSITE PLATFORM PARTNERS, INC., | ) | |
| d/b/a NORTH AMERICAN SATELLITE | ) | |
| CORP., and NORTH AMERICAN | ) | |
| SATTELLITE CORP., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 16-0491-CV-W-BP |
| | ) | |
| ORBCOMM, INC., d/b/a | ) | |
| ORBCOMM SENS, LLC, and | ) | |
| COMTECH MOBILE DATACOM CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING
## DEFENDANT COMTECH MOBILE DATACOM CORPORATION'S
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiffs InSite Platform Partners, Inc., ("InSite"), and North American Satellite Corp., ("NASCorp"), have sued Orbcomm SENS, LLC, ("Orbcomm"), and Comtech Mobile Datacom Corporation, ("Comtech"). The Third Amended Complaint, (Doc. 51), added Comtech as a defendant and asserts Comtech is liable for breach of contract, fraud, and conversion. Comtech has filed a Motion to Dismiss, arguing that it should be dismissed because it is not subject to personal jurisdiction in Missouri.[1]

The Court held a hearing on Comtech's motion on May 12, 2017. Thereafter, the parties engaged in additional discovery, and then filed supplemental briefs that included affidavits and deposition testimony. The Court then directed the parties to further supplement the Record,

---

[1] In its Supplemental Brief, (Doc. 88, pp. 1-3), Comtech suggests that NASCorp is not the real party in interest – and therefore lacks standing – because it transferred all of its assets (including these claims) to InSite in 2014. Comtech's argument appears well-taken, but it was raised for the first time in its Supplemental Brief and, unlike the issue of personal jurisdiction, has not been fully addressed by the parties. And, to the extent that Comtech's argument is related to the Court's subject matter jurisdiction, the Court is empowered to bypass the issue and address Comtech's arguments regarding personal jurisdiction first. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584-85 (1999). Therefore, the Court will focus on personal jurisdiction and express no view about NASCorp's standing.

which they did on October 5, 2017. (Doc. 100.) Having reviewed the parties' arguments and the evidence submitted, the Court concludes that Comtech is not subject to personal jurisdiction for the claims asserted. Therefore, Comtech's motion, (Doc. 56), is **GRANTED** and the claims against Comtech are **DISMISSED WITHOUT PREJUDICE**.

## I.  BACKGROUND

NASCorp developed a system called "SkyTracker," which allows customers to monitor the levels in propane and other gas storage tanks. A SkyTracker unit is a piece of hardware supplied by NASCorp that is affixed to a customer's storage tank. SkyTracker monitors the levels in the tank to which it is attached and sends the information to a satellite, which then transmits the data to a station on the ground. From there, the data is sent to NASCorp's servers and eventually made available to the customer. NASCorp purports to retain ownership of "all of the hardware, software, equipment, and other components of each SkyTracker unit, [as well as] the data and transmissions sent and received by the SkyTracker units." (Doc. 51, ¶ 15.)

In December 2009, NASCorp – a Tennessee corporation with its headquarters in that state – contracted with Comtech – a Maryland corporation with its principal place of business in that state – for the hardware necessary to "manufacture . . . SkyTracker units as well as activation, messaging, monitoring and other services needed to operate the SkyTracker system." (Doc. 51, ¶ 20.) Comtech is not registered to conduct business in Missouri, and it did not manufacture the SkyTracker units in Missouri. (Doc. 57-1, p. 2, ¶¶ 8-9.) [2] It shipped the SkyTracker units and related engineering materials to NASCorp's facility in Tennessee. (*E.g.,* Doc. 57-1, p. 2, ¶ 12; Doc. 60-1, ¶ 4.) Comtech also sent invoices to NASCorp's offices in Tennessee. (Doc. 60-1, ¶ 5.)

---

[2] All page numbers are those generated by the Court's CM/ECF System.

Comtech was also responsible for providing the satellite services necessary for the system to function, and it arranged for those satellite services to be supplied by Global Star (which is not a party in this case). The individual SkyTracker units transmitted data to Global Star's satellites via radio waves, and from there the data was transmitted to Global Star's ground station. At the ground station, equipment owned by Global Star converted the data to a digital format so that it could be conveyed over the internet, and then sent the data over the internet to Comtech's servers. Neither Global Star's ground station nor Comtech's servers were located in Missouri. (Doc. 88, pp. 38-55 (Johnson Deposition, pp. 13-30).)

Upon receipt of the data, Comtech transmitted it over the internet to NASCorp's servers; these transmissions to NASCorp occurred daily. From 2009 until January 31, 2011, NASCorp's servers were located in St. Louis, Missouri. (Doc. 59-1, ¶ 8; Doc. 94, p. 8; Doc. 100-1, ¶¶ 1-2; Plaintiffs' Response to Interrogatory No. 3 and No. 4.) After January 31, 2011, Plaintiff's servers were in Dallas, Texas. (Doc. 100, p. 4.)

At some point disputes arose between NASCorp and Comtech; the nature of these disputes is not fully explained in the Record, but the details are not relevant to the issues before the Court. In June 2013, NASCorp and Comtech entered a "Contract Settlement Modification," (Doc. 57-1, pp. 6-8), which is the contract that Plaintiffs allege has been breached. (Doc. 51, ¶¶ 21-24, 40.) The June 2013 Agreement, *inter alia*, set the terms for NASCorp's purchase of a specified number of additional SkyTracker units, required NASCorp to purchase satellite services from Comtech, required NASCorp to "pay a negotiated settlement amount of $54,186.93 to settle all outstanding Comtech invoices," and required Comtech to "release all SkyTracker III engineering drawings and related information to NASCorp." The June 2013 Agreement further provided that the parties "mutually release, acquit, satisfy, and forever

discharge each other . . . from any and all existing past, present or potential claims," thereby settling all claims that existed at that point in time. The 2013 agreement was negotiated in Tennessee, and consistent with the parties' prior relations all of the items were to be delivered to NASCorp in Tennessee. (Doc. 57-1, p. 4, ¶ 20.) And, given that NASCorp's servers were in Texas, the satellite services contemplated by the agreement contemplated that the data would be sent to Texas.

On October 1, 2013, Orbcomm purchased Comtech's operations and assumed Comtech's obligation to provide satellite services and data transmission services. (Doc. 51, ¶¶ 25-26; Doc. 60-1, ¶¶ 2, 5.) Comtech nonetheless continued transmitting data to NASCorp's servers in Dallas until May 30, 2014. (Doc. 100, p. 2.) Comtech had no further involvement with SkyTracker after that date.

In September 2014 InSite – a Missouri corporation with its headquarters in Missouri – called a Note issued to it by NASCorp and foreclosed on NASCorp's assets. Thereafter, InSite continued operating NASCorp's business under the name "NASCorp." (Doc. 51, ¶¶ 8-11.) However, as this occurred more than three months after Comtech stopped all involvement with SkyTracker, Comtech and InSite did not interact.

Plaintiffs provided two Declarations from R.L. (Rick) Humphrey, (Doc. 59-1; Doc. 100-1), who identifies himself as the Chairman of the Board and CEO of InSite, "the successor to" NASCorp. (Doc. 59-1, ¶¶ 3-4; Doc. 100-1, ¶¶ 3-4.) His first Declaration states that "when conducting business with Defendant, Plaintiff operated and maintained an office in Cape Girardeau, Missouri" and that "Plaintiff's employees communicated with Defendant from Plaintiff's office or locations in Missouri and vice versa related to . . . Skytracker." (Doc. 59-1, ¶¶ 9-10.) However, this Declaration does not establish that Comtech had any contacts with

4

Missouri (much less the nature, quantity, or quality of those contacts) because it does not specify whether the "Plaintiff" with "offices or locations in Missouri" is NASCorp or InSite, and does not specify whether the "Defendant" communicating with people in Cape Girardeau is Comtech or Orbcomm.[3]

The second declaration avers that Comtech mailed SkyTracker units to NASCorp for testing in Cape Girardeau and that Comtech's engineers were in "consistent and regular" contact with NASCorp's engineers in Cape Girardeau until September 2010. (Doc. 100-1, ¶¶ 8-9.) However, Humphrey was the Chairman and CEO of InSite, not NASCorp, and his Declaration provides no basis for his knowledge of interactions between NASCorp and Comtech that occurred years before InSite acquired NASCorp. More importantly, other evidence – including Plaintiffs' responses to discovery – demonstrates that NASCorp did not have any facilities in Cape Girardeau at the time Comtech was performing its contractual duties. For instance, Interrogatory No. 3 asked Plaintiffs to identify "the address of each of the [p]remises that NASCorp has leased or owned in its own name since 2009, and describe specifically." (Doc. 88, p. 16.) Plaintiffs' response lists only two locations in Missouri: the location where NASCorp maintained its servers in St. Louis from July 2005 through January 2011, and InSite's headquarters in St. Charles, Missouri, which were leased in October 2014 and, therefore, after Comtech was no longer involved with SkyTracker. (Doc. 88, p. 17.) Plaintiffs' answer to Interrogatory No. 3 lists no locations for NASCorp in Cape Girardeau, so Humphrey's reference to communications directed to Cape Girardeau cannot have been communications directed by

---

[3] Plaintiffs frequently utilize "NASCorp" to refer to either or both Plaintiffs even though they are (or were) two distinct entities: (1) the Tennessee corporation named "NASCorp" that operated until September 2014, and (2) InSite, which continued operating the SkyTracker business under the "NASCorp" name. Thus, it is sometimes difficult to determine to whom Plaintiffs are referring when they utilize the term "NASCorp," and the Court has relied on the date events occurred to ascertain whether they occurred before or after InSite took over NASCorp. The Court also notes that Humphrey's first Declaration is dated March 29, 2016 – more than eight months before Comtech became a defendant in this case, which strongly suggests that Humphrey's reference to "Defendant" could not have been a reference to Comtech and instead refers to Orbcomm which, at the time, was the only defendant.

5

Comtech to NASCorp in Missouri. The only other information about offices in Cape Girardeau is Plaintiffs' answer to Interrogatory No. 7, which states in part that "[t]he Cape Girardeau office provided data monitoring, information technology services, and other technical support for Plaintiffs' business operations," but nothing demonstrates these were NASCorp's (as opposed to InSite's) offices.

Plaintiffs identify no evidence of NASCorp having offices or facilities in Missouri other than its servers in St. Louis, but as stated above Comtech stopped transmitting to the servers in St. Louis when NASCorp moved the servers to Dallas. Plaintiffs' answer to Interrogatory No. 3 also states that NASCorp had no employees with its servers in St. Louis, and Plaintiffs identify no other evidence that NASCorp had employees in Missouri. InSite may have moved the servers back to Missouri when it took over NASCorp in September 2014 – but this was after Comtech was no longer involved with SkyTracker in any capacity. Finally, while Comtech was originally retained to create the SkyTracker units from NASCorp's design, (Doc. 88, pp. 57-70 (Johnson Deposition, pp. 32-45)), there is no evidence that any communications were directed by Comtech to Missouri and, as stated, all deliveries were made to NASCorp in Tennessee.

Therefore, the only contacts between Comtech and Missouri that Plaintiffs have established are Comtech's transmissions of data to Missouri from December 4, 2009 to January 29, 2011. The question is: are these contacts sufficient to support personal jurisdiction over Comtech? The Court analyzes this question below.

## II. DISCUSSION

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists" and must "make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th

Cir. 2014). "While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003).

There are two types of personal jurisdiction: general and specific. "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. However, if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction." *Id.* at 648. Plaintiffs do not specify which theory they believe applies, so the Court will consider both.

### A.  Specific Jurisdiction

"When assessing whether personal jurisdiction exists over a nonresident defendant, jurisdiction must be authorized by Missouri's long arm statute and the defendant must have sufficient minimum contacts with the forum state to satisfy due process." *Downing v. Goldman Phipps, PLLC,* 764 F.3d 906, 911 (8th Cir. 2014). These are separate inquiries under the Missouri long arm statute, *see Myers v. Casino Queen*, 689 F.3d 904, 909-10 (8th Cir. 2012), but for the sake of argument the Court will presume that Comtech's transmission of data to NASCorp's servers in Missouri constituted the transaction of business in this State. *See* Mo. Rev. Stat. § 506.500(1). The Court nonetheless concludes that Comtech's contacts with Missouri are insufficient to satisfy the requirements of due process.

There is "a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state to exercise specific jurisdiction over defendants. The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a

7

forum for its residents; and 5) convenience of the parties. We give significant weight to the first three factors." *Fastpath*, 760 F.3d at 821. The third factor analyzes the connection between the cause of action and the contacts, so "[t]he third factor distinguishes whether the jurisdiction is specific or general." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The balance of these factors does not favor a finding of personal jurisdiction.

Comtech transmitted data to Missouri from December 4, 2009 to January 29, 2011. Plaintiffs suggest that "the contract between the parties" also called for performance in Missouri, (*e.g.,* Doc. 59, p. 7), but this is true only insofar as Comtech was obligated to transmit data to NASCorp's servers when those servers happened to be in Missouri. Comtech's contact with Missouri ended in January 2011 when NASCorp moved its servers to Texas – seventeen months before the agreement that is the basis for this suit was executed.[4] No other aspects of a contract *involving Comtech* required performance in Missouri: Comtech manufactured hardware and sent it to NASCorp, but as discussed in Part I none of this activity occurred in Missouri. It must also be remembered that, given the timing of (1) Comtech's cessation of activity related to SkyTracker and (2) InSite taking control of NASCorp, Comtech never transacted business with InSite, so the fact that InSite is headquartered in Missouri (and, therefore, some activity involving InSite probably occurred in Missouri) is irrelevant.

This leads to consideration of the connection between Comtech's Missouri contacts and Plaintiffs' claims against Comtech. Plaintiffs' claims against Comtech do not arise from the transmission of data to servers in St. Louis; Plaintiffs' claims arise from Comtech's failure to deliver engineering deliverables required under the June 2013 contract, and those deliveries (like

---

[4] Even if Humphrey's second Declaration is correct it does not change this conclusion, because he describes Comtech's purported contacts with NASCorp's engineers in Cape Girardeau as ending in September 2010. (Doc. 100-1, ¶¶ 8-9.)

the prior deliveries) would have been made to NASCorp's offices in Tennessee.[5] Plaintiffs resist this conclusion by suggesting their fraud and conversion claims "date back to early 2010," (Doc. 94, p. 12), but this is not accurate. There are two fraud claims, only one of which is asserted against Comtech. This fraud claim relates to Comtech's failure to deliver the "engineering deliverables" as required by the June 2013 agreement, (Doc. 51, pp. 6-7),[6] and performance of that agreement (1) did not date back to 2010, (2) has nothing to do with the transmission of data to Missouri, and (3) would have required delivering hardware to Tennessee and not Missouri. The conversion claim also relates to Comtech's failure to produce the engineering deliverables. (Doc. 51, pp. 7-8.) And, the breach of contract claim – to the extent that it relates to Comtech as opposed to Orbcom[7] – also arises from the failure to deliver the hardware and other items required by the 2013 agreement. (Doc. 51, p. 5.)

Plaintiffs also point to paragraph 27 of the Third Amended Complaint, (*e.g.,* Doc. 94, p. 12), which alleges that 10,000 SkyTracker units were pirated, stolen or reverse engineered between 2007 and 2013. Paragraph 27 concludes by alleging that "NASCorp notified *Orbcomm* and requested that all satellite services be cancelled on these units." (Doc. 51, ¶ 27 (emphasis supplied).) This allegation does not mention Comtech and is irrelevant to any of Plaintiffs' claims against Comtech. Paragraph 27 relates to Plaintiffs' fraud claim against Orbcomm, which alleges that in March 2015 Orbcomm falsely represented that it had terminated satellite service to the pirated SkyTracker units (Doc. 51, p. 6.) It also relates to Plaintiffs' claim that Orbcomm

---

[5] The Court also notes that Plaintiffs' claims do not arise from the purported communications with engineers Humphrey described in his second Declaration.

[6] The Court refers to page numbers instead of counts from the Third Amended Complaint because there are two counts entitled "Count III."

[7] Comtech's and Orbcomm's contacts with Missouri must be distinguished because "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

breached the agreement by failing to discontinue services to those SkyTracker units. (Doc. 51, p. 5.) These theories are not asserted against Comtech, so the allegations about piracy of the SkyTracker units will not establish personal jurisdiction over Comtech.

Finally, Plaintiffs compare this case to one in which InSite sued one of its customers in the Eastern District of Missouri, alleging that the customer reactivated more than 2,100 deactivated SkyTracker units instead of returning them to InSite. Plaintiffs insist that the case stands for the proposition that transmitting data to Plaintiffs' servers in Missouri is sufficient to establish personal jurisdiction. However, this is an over-generalization of the decision in that case. InSite was the sole plaintiff, which suggests that all of the customer's interactions regarding SkyTracker – not just the transmission of data – were connected to Missouri. This suggestion is confirmed by that court's explanation for finding the customer was subject to jurisdiction in Missouri: the customer's data had been transmitted to Missouri for decoding and then transmitted from Missouri to the customer in California; the customer took possession of the more than 2,100 SkyTracker units "F.O.B. Cape Girardeau, Missouri;" the customer received technical support and training from InSite's staff in Missouri, and the customer entered a series of agreements with InSite, a Missouri corporation with its principal place of business in Missouri. *InSite Platform Partners, Inc. v. Pacific LPG Corp.,* 2016 WL 62777195, *4 (E.D. Mo. 2016.) Thus, the two cases are factually distinguishable.

The last two factors for specific jurisdiction are less important; nonetheless, they do not favor a finding of personal jurisdiction. InSite – a Missouri corporation – has asserted claims against Comtech, but Comtech did not contract with, or conduct business with, InSite. Comtech transacted business with a Tennessee corporation (NASCorp); thus, Missouri does not have a strong interest in providing a forum for the claims against Comtech, and whatever interest it has

10

is further diminished by the fact that the claims against Comtech are not related to any activity that occurred in this state. Finally, it may be convenient for InSite to litigate in Missouri, but it is not convenient for Comtech, so this factor does not play a significant role in the case. For these reasons, the Court concludes that Comtech is not subject to specific jurisdiction.

### B. General Jurisdiction

As discussed above, Plaintiffs' claims do not arise from Comtech's contacts with Missouri, so general jurisdiction would appear to be the only possible basis for personal jurisdiction. However, "[b]ecause it extends to causes of action unrelated to the defendant's contacts with the forum state, general jurisdiction over a defendant is subject to a higher due-process threshold." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.,* 646 F.3d 589, 595 (8th Cir. 2011). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quotation omitted); *see also Viasystems, Inc.,* 646 F.3d at 595. "General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG v. Bauman,* 134 S. Ct. 746, 762 n.20 (2014).

Here, only one contact by Comtech with Missouri has been identified: from approximately December 2009 until January 31, 2011, Comtech transmitted data over the internet into Missouri. This contact with the state (which ended before the contract that forms the basis for Plaintiffs' claims against Comtech was executed) is not enough to make Comtech – a Maryland corporation with its principal place of business in that state and who conducted no

other activity in Missouri – "at home" in this state. The Court therefore concludes that it does not have general jurisdiction over Comtech.

### III.  CONCLUSION

Comtech is not subject to general jurisdiction in Missouri because it is not "at home" in this state.  Moreover, after analyzing the requirements for specific jurisdiction, the Court concludes that Comtech lacks the minimum contacts with Missouri necessary to satisfy the Due Process Clause.  Therefore, Comtech's motion to dismiss, (Doc. 56), is **GRANTED** and Comtech is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: October 26, 2017　　　　　　　　　　UNITED STATES DISTRICT COURT